UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:05CV-146-R

INTERNAL REVENUE SERVICE                                                              PLAINTIFF

v.

JAMES V. WELLS, et al.                                                                DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on Defendants Horace D. Pegram's and Kathy D. Pegram's (the Pegrams) Motion for Summary Judgment on their Counterclaim Against Plaintiff, United States of America (Docket #25). Although Plaintiff did not file a response to this motion, the deadlines for such filings have passed. This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is **DENIED**.

**BACKGROUND**

On April 24, 1992, the Pegrams, Gwendolyn Wells, James V. Wells, Delton Lee Brantley, Doris Wells Brantley, James David Wells, and Sherry P. Wells recorded a deed of conveyance (the 1992 Deed) in the office of the Green County Clerk in Greenburg, Kentucky, for their joint purchase of a piece of real estate known as the Green County Ranch (the Ranch) located at Cox Taylor Road, Greensburg, Green County, Kentucky.[1] The Pegrams were conveyed a one-half undivided interest

---

[1] The property description in the 1992 Deed is as follows:

BEGINNING at a sycamore on the bank of Green River at the mount of a branch corner to Loy Brother's Farms; thence with Loy's line S 42 deg 06' W 534-C ft to a corner post; thence S 43 deg 12' W 405-6 ft to a corner post; thence S 25 deg 24' W 151-8 ft to a walnut; thence N 64 deg 25' W 1448 feet to a corner post; thence S 34 deg 13' W 1756-1 ft to a poplar corner to Haywood Mitchell; thence with the line of Mitchell N 63 deg 19' W 72505 ft to a corner stone to Glenn

Atwell; thence with the line of Atwell N 03 deg 14' E 3019-7 ft to a post; thence S 79 deg. 42' W 1002 ft to corner post at a road; thence with the road S 14 deg 19' W 635-4 ft to a corner post to Lewis Judd; thence with Judd's line N 67 deg 29' W 792-8 ft to a corner post in the line of Glenn Atwell; thence with Atwell and Brooks Edwards line N 12 deg 53' E 1171-5 ft to a corner post; thence with Edwards line N 40 deg 20' W 1799-4 ft to a post at a road; thence with the road N 02 deg 02' E 37-7 ft to a corner post; thence N 40 deg 06' W 136-5 ft to a post; thence N 29 deg 42' E 577-4 ft to a post; thence still with road N 12 deg 40' E 1489-3 ft to a post; thence N 13 deg 55' E 365-8 ft to a post; thence N 42 deg 51' E 816-8 ft to a corner post at a road intersection; thence with said road S 48 deg 46' E 2841-4 ft to a post; thence leaving said road with the lines at Kelly N 35 deg 15' E 1790 ft to a corner post; thence N 52 deg 39' E 182-4 ft to a gum in a branch; thence N 23 deg 35' E 530-2 ft to a corner post; thence S 59 deg 25' W 1025-5 ft to a corner post; thence N 68 deg 01' W 863-2 ft to corner post to Blackne; thence with the lines of Blackne N 21 deg 34' W 206 ft to a corner post; thence N 61 deg 40' E 329-1 ft to a corner post; thence N 02 deg 58'E 891-4 ft to an elm corner to Darhell; thence with the line of Darhell and Milby N 39 deg 17' E 1489-3 ft to a corner post; thence N 55 deg 09' W 552-2 ft to a dogwood corner; thence N 25 deg 13' E 1419-2 ft to a sycamore on the bank of Green River; thence down the River with its meanders S 70 deg 45' E 1658 ft; thence S 40 deg 37' E 594 ft; thence S 19 deg 00' E 393 ft; thence S 08 deg 00' E 528 ft; thence S 03 deg 30' W 313-5 ft; thence S 00 deg. 30 E 990 ft; thence S 04 deg 30' W 2706 ft; thence S 06 deg 59' W 3518 ft; thence S 15 deg 45' E 1405 ft to the point of beginning. Containing 1034-33 acres, more or less.

There is reserved from the above described property the following two reservations:

1. There is reserved one (1) acre including the graveyard, extending from the road back to the fence now standing back of said graveyard, together with the right of passway to and from same. This reservation being of record in Deed Book 135, page 86, Office Green County Clerk, Greensburg, Kentucky.

2. There is reserved and not conveyed from the above mentioned lands all of the lands that are fenced in around Dr. S. J. Simmons' grave, and a passageway from the public road to said grave. The grave lot herein mentioned and reserved is 42 feet wide and 80 feet long. This reservation being of record in Deed Book 136, page 544, Office Green County Clerk, Greensburg, Kentucky.

Being the same property conveyed to H. D. Pegram and his wife, Kathy D. Pegram; Gwendolyn B. Wells and her husband, James V. Wells; Delton Lee Brantley and his wife, Doris Wells Brantley; James David Wells and his wife, Sherry P. Wells; by deed from Diversified Quantities, Inc., a Kentucky corporation, dated April 24, 1992, recorded in Deed Book 168, Page 246, Office Green County Clerk, Greensburg, Kentucky.

IT IS UNDERSTOOD AND AGREED between the parties that the interest conveyed is as follows:

1. A one-half undivided interest to H. D. Pegram and his wife, Kathy D. Pegram, jointly and

in the land, while the three other couples were each conveyed a one-sixth interest in the land.

Also on April 24, 1992, the Pegrams, Gwendolyn Wells, James V. Wells, Delton Lee Brantley, Doris Wells Brantley, James David Wells, and Sherry P. Wells received, executed, signed, and delivered to South Central Bank a Simple Interest Note and Security Agreement (Loan #408695362) in the face amount of $314,557.32. Security for the note is a real estate mortgage dated April 24, 1992, which conveyed a security interest in and to the Ranch. The mortgage was recorded April 25, 1992, and is of record in Mortgage Book 118, Page 321, Office Green County Clerk.

On June 28, 1994, the parties to the 1992 mortgage received, executed, signed, and delivered to South Central Bank their Simple Interest Note and Security Agreement (Loan #408695361) in the face amount of $235,000. Security for the note is the real estate mortgage dated April 24, 1992.

This case was filed on September 21, 2005, by the Government to foreclose its federal tax liens against the real property owned by Wells and the Pegrams. On December 13, 2005, the Pegrams filed their Answer, Counterclaim against the Government, and Cross-claim against Wells.

---

      equally, for and during their joint, natural lives, with remainder to the survivor of them, their heirs and assigns of such survivor forever.

2. A one-sixth undivided interest to Gwendolyn B. Wells and her husband, James V. Wells, jointly and equally, for and during their joint, natural lives, with remainder to the survivor of them, their heirs and assigns of such survivor forever.

3. A one-sixth undivided interest to Delton Lee Brantley and his wife, Doris Wells Brantley, jointly and equally, for and during their joint, natural lives, with remainder to the survivor of them, their heirs and assigns of such survivor forever.

4. A one-sixth undivided interest to James David Wells and his wife, Sherry P. Wells, jointly and equally, for and during their joint, natural lives, with remainder to the survivor of them, their heirs and assigns of such survivor forever.

South Central Bank filed its Answer, Counterclaim, and Cross-claim on January 9, 2006. On September 1, 2006, the Pegrams filed a Motion for Summary Judgment on their Counterclaim and a Motion for Default Judgment on their Cross-claim. On March 9, 2007, and as amended on March 23, 2007, this Court granted South Central Bank's Motion for Partial Summary Judgment against the Pegrams, holding that South Central Bank's real estate mortgage on the Ranch has priority over the federal tax lien. On March 28, 2007, this Court granted Motions for Default in favor of South Central Bank and the Pegrams, and against Wells for his failure to plead or otherwise defend the action.

At all times, the Pegrams have had the sole responsibility for farming and maintaining the Ranch. The Pegrams have developed the original 200 acres of farmable land on the Ranch into 800 acres of farmable land. They have paid all ad valorem property taxes and insurance premiums since the 1992 conveyance and have, in total, expended nearly $3,000,0000 running farming operations on the Ranch. The Ranch is the Pegrams' primary source of income, and the Pegrams are the only parties to the 1992 Deed that have contributed financial resources to the property.

Subsequent to the recordation of the 1992 Deed and the Pegrams' commencement of farming activities on the Ranch, notice of federal tax liens, reflecting the tax liabilities of James V. Wells for 1988, 1989, 1990, and 1991, were filed with the Recorder of Deeds in Green County, Kentucky on November 24, 1993. On May 26, 1999, without the Pegrams' knowledge, Gwendolyn Wells, James V. Wells, Delton Lee Brantley, Doris Wells Brantley, James David Wells, and Sherry P. Wells executed a deed (the 1999 Deed) purporting to convey the Ranch to Wells for a sum of $10.00. The metes and bounds property description contained in the 1999 Deed is nearly identical to the property description in the 1992 Deed, although the two express reservations contained in the 1992 Deed

were omitted.[2]  The 1999 Deed was duly recorded in the office of the Green County Clerk on October 2, 2000, but the Pegrams did not know of the conveyance until they read of the deed's recordation in the local paper.

      The Pegrams seek both to dismiss the United States' claim to foreclose its federal tax liens upon the Ranch and to rescind the 1999 Deed.  In the alternative, the Pegrams ask the Court to exercise its discretion and bar a judicial sale of the Ranch.  Such a sale is authorized under the

---

[2] The property description in the 1999 Deed is as follows:

BEGINNING at a sycamore on the bank of Green River at the mount of a branch corner to Loy Brother's Farms; thence with Loy's line S 42 deg 06' W 534-C ft to a corner post; thence S 43 deg 12' W 405-6 ft to a corner post; thence S 25 deg 24' W 151-8 ft to a walnut; thence N 64 deg 25' W 1448 feet to a corner post; thence S 34 deg 13' W 1756-1 ft to a poplar corner to Haywood Mitchell; thence with the line of Mitchell N 63 deg 19' W 72505 ft to a corner stone to Glenn Atwell; thence with the line of Atwell N 03 deg 14' E 3019-7 ft to a post; thence S 79 deg. 42' W 1002 ft to corner post at a road; thence with the road S 14 deg 19' W 635-4 ft to a corner post to Lewis Judd; thence with Judd's line N 67 deg 29' W 792-8 ft to a corner post in the line of Glenn Atwell; thence with Atwell and Brooks Edwards line N 12 deg 53' E 1171-5 ft to a corner post; thence with Edwards line N 40 deg 20' W 1799-4 ft to a post at a road; thence with the road N 02 deg 02' E 37-7 ft to a corner post; thence N 40 deg 06' W 136-5 ft to a post; thence N 29 deg 42' E 577-4 ft to a post; thence still with road N 12 deg 40' E 1489-3 ft to a post; thence N 13 deg 55' E 365-8 ft to a post; thence N 42 deg 51' E 816-8 ft to a corner post at a road intersection; thence with said road S 48 deg 46' E 2841-4 ft to a post; thence leaving said road with the lines at Kelly N 35 deg 15' E 1790 ft to a corner post; thence N 52 deg 39' E 182-4 ft to a gum in a branch; thence N 23 deg 35' E 530-2 ft to a corner post; thence S 59 deg 25' W 1025-5 ft to a corner post; thence N 68 deg 01' W 863-2 ft to corner post to Blackne; thence with the lines of Blackne N 21 deg 34' W 206 ft to a corner post; thence N 61 deg 40' E 329-1 ft to a corner post; thence N 02 deg 58'E 891-4 ft to an elm corner to Darhell; thence with the line of Darhell and Milby N 39 deg 17' E 1489-3 ft to a corner post; thence N 55 deg 09' W 552-2 ft to a dogwood corner; thence N 25 deg 13' E 1419-2 ft to a sycamore on the bank of Green River; thence down the River with its meanders S 70 deg 45' E 1658 ft; thence S 40 deg 37' E 594 ft; thence S 19 deg 00' E 393 ft; thence S 08 deg 00' E 528 ft; thence S 03 deg 30' W 313-5 ft; thence S 00 deg. 30 E 990 ft; thence S 04 deg 30' W 2706 ft; thence S 06 deg 59' W 3518 ft; thence S 15 deg 45' E 1405 ft to the point of beginning.  Containing 1034-33 acres, more or less.

Internal Revenue Code, 26 U.S.C. § 7403.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I. STATUS OF THE 1999 DEED

To promote the prompt and certain collection of federal taxes, § 7403 of the Internal

Revenue Code (the Code) authorizes the United States to bring suit in a district court to enforce liens levied against a taxpayer's property as a result of his or her failure to pay any tax. 26 U.S.C. § 7403(a) (2007); *United States v. Rodgers*, 461 U.S. 677, 681-82 (1983). Section 6321 of the Code empowers the government to attach a lien upon all real and personal property owned by a delinquent taxpayer. 26 U.S.C. § 6321 (2007). Further, § 7403(c) authorizes the judicial sale of property upon which a lien has been placed in order to satisfy the tax indebtedness of a delinquent taxpayer. 26 U.S.C. § 7403(c).

In applying a federal revenue act, "state law controls in determining the nature of the legal interest which the taxpayer had in the property." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (U.S. 1985) (citations omitted), quoting *Aquilino v. United States*, 363 U.S. 509, 513 (U.S. 1960). The "definition of underlying property interests is left to state law, but the consequences that attach to those interests is a matter left to federal law." *Rodgers*, 461 U.S. at 683. The attachment of a federal lien under § 6321 depends on whether a person has "property" or "rights to property" under state law. *Aquilino*, 363 U.S. at 513; 26 U.S.C. § 6321. Determining the nature of the legal interests of Wells and the Pegrams in the Ranch under Kentucky law is essential to deciding the extent to which the Government, may, if at all, enforce the tax liens levied against the property.

The 1992 Deed conveyed a one-half interest in the Ranch to the Pegrams, a one-sixth interest in the ranch to James V. and Gwendolyn Wells, a one-sixth interest in the ranch to Delton and Doris Brantley, and a one-sixth interest in the ranch to James D. and Sherry Wells. Therefore, the Ranch had multiple owners. There are three estates in real property involving more than one owner: tenancy in common, tenancy by the entirety, and joint tenancy. *Sanderson*

*v. Saxon*, 834 S.W.2d 676, 678 (Ky. 1992). Only the first two estates apply in this situation.

According to the terms of the 1992 Deed, each couple held their interest in the Ranch as a tenancy by the entirety. Under Kentucky law, a tenancy by the entirety is "an estate in land shared by husband and wife, whereby at the death of either the survivor is entitled to full fee simple ownership." *Sanderson*, 834 S.W.2d at 678. The husband and wife hold the property as one entity; they do not each hold a one-half interest in the property. *Id.* The language in the 1992 Deed clearly states that each member of each marriage holds his or her interest "jointly and equally, for and during their joint, natural lives, with remainder to the survivor of them, the heirs and assigns of each survivor forever." (Docket #25). When property is held between a husband and wife in a tenancy by the entirety, neither spouse may alienate the property without the assent of the other spouse. *Hays v. Schaefer*, 399 F.2d 300, 301 (6th Cir. 1968). Any action taken regarding the property must be undertaken jointly to be valid. *See generally, id.*

The relationship created among the four couples by the terms of the 1992 Deed, however, was a tenancy in common. In Kentucky, a tenancy in common is an estate "in which two or more persons hold title to land in such fashion as to give each of them undivided possession." *Sanderson*, 834 S.W.2d at 678 (citing *McLeod v. Andrews*, 196 S.W.2d 473 (Ky. 1946)). Each tenant in common is equally entitled to possession of the entire property and there are no rights of survivorship among the tenants. *See generally, id.* A tenant in common may freely alienate his or her share of property without the assent of the other tenants in common. *Id.* The language of the 1992 Deed indicates that each couple held an "undivided interest" in the land, and there is no indication that the couples were meant to hold the land as joint tenants with rights of survivorship. (Docket #25). Language of survivorship is a crucial element in creating the estate

7

known as a joint tenancy, but because this language does not exist in the deed, the conveyance created a tenancy in common among the couples. *See, Sanderson*, 834 S.W.2d at 678.

While a cotenant in a tenancy in common may freely alienate his or her interest in the property, a cotenant cannot either convey a larger interest than he or she owns or transfer the interest of another cotenant without authorization. *See, Am. Baptist Home Mission Soc. v. Bowman*, 297 F. 438, 441 (6th Cir. 1924)*; see also, Finch v. Haynes,* 144 Mich. 352, 354 (Mich. 1906); *see also*, 23 Am Jur 2d Deeds § 274 (2007). If a cotenant conveys the interest of another cotenant, that conveyance is void to the extent of the non-conveying cotenant's interest. *Id.*

The Pegrams contend that the 1999 Deed should be rescinded because the tenants in common who were parties to the deed conveyed a greater interest in the Ranch than they possessed. KRS § 381.150 states that when a deed purports to pass a greater right or estate than the grantor "can lawfully pass or assure," the deed "shall operate to convey on warrant so much of the right and estate as such person can lawfully convey." KRS § 381.150 (2006). A "deed can only convey title to land actually owned by grantor and the grantee takes no greater title under a deed than the grantor had." *York v. Perkins*, 269 S.W.2d 242, 243 (Ky. 1954).

Therefore, while the 1999 Deed does on its face purport to deed the entire Ranch to James V. Wells in fee simple for a sum of $10.00, there is no need to rescind the deed through the operation of KRS § 381.150. The 1992 Deed conveyed the Ranch to each couple as tenants in common, and the couples, as cotenants, had the right to alienate their respective interests in the Ranch. Cotenants may enter into transactions with one another and do not need to consult their fellow cotenants regarding such transactions. *See, McLendon v. Georgia Kaolin Co.*, 837 F. Supp. 1231 (D. Ga. 1993) (citing 20 Am Jur 2d Cotenancy and Joint Ownership § 92). The

Pegrams claim that because they were not a party to the 1999 Deed, it must be rescinded. However, their participation was not necessary for the other cotenants to convey their respective interests to Wells.

However, it is true that the 1999 Deed could not have conveyed the entire Ranch to Wells because no cotenant may convey a larger interests than he or she owns. *York,* 269 S.W.2d at 243. The three couples who executed the 1999 Deed each held only a one-sixth interest in the Ranch. No couple could validly convey to Wells more that their one-sixth interest. The Pegrams were not party to the 1999 Deed, and therefore their one-half interest in the Ranch was not conveyed to Wells. Inasmuch as the 1999 Deed purports to convey the entire Ranch to Wells, the attempted conveyance is void. Instead, under KRS § 381.150, the 1999 Deed operates only to convey a one-half undivided interest in the Ranch to Wells. Thus, as of May 26, 1999, and continuing through today, the Pegrams and Wells each hold an undivided one-half interest in the Ranch. For these reasons, the Court concludes that the 1999 Deed should not be rescinded, and should instead be understood to operate as conveying a one-half interest in the Ranch to Wells.

As the Court has found that the 1999 Deed should not be rescinded, the Court also cannot dismiss the United States' claim to foreclose the federal tax liens placed upon the Ranch and filed with the Recorder of Deeds in Green County reflecting Wells' tax liabilities for the years 1988, 1989, 1990, and 1991. (Docket #1). A Government lien under § 6321 cannot extend further than the interests of the delinquent taxpayer. 26 U.S.C. § 6321*; Rodgers*, 461 U.S. at 690. However, a § 6321 lien, "is broad and reveals that Congress meant to reach every interest in property that a taxpayer might have." *Drye v. United States*, 528 U.S. 49, 56 (1999) (citing

9

*United States v. Nat'l Bank of Commerce*, 472 U.S. at 719-20). This Court finds that Wells was conveyed a one-half interest in the Ranch by the 1999 Deed. Therefore, the Court finds that pursuant to 26 U.S.C. § 6321, the Government properly attached the tax liens upon Wells' one-half interest in the Ranch. The Government has not, and cannot have, attached a lien to the one-half interest held by the Pegrams. *Rodgers*, 461 U.S. at 690 (1982); 26 U.S.C. § 6321.

## II.   EXERCISING THE COURT'S DISCRETION REGARDING THE SALE

The Pegrams also ask the Court to exercise its discretion to bar any judicial sale of the property if it finds that Wells owns a one-half interest in the Ranch, as it has. This Court does have limited discretion to decide whether to order foreclosure pursuant to 26 U.S.C. § 7403. *Rodgers*, 461 U.S. at 709. Section 7403 has "traditionally been interpreted as conferring" discretion upon the courts to decide the appropriate remedy under the section. *United States v. Eaves*, 499 F.2d 869, 871 (10th Cir. 1974). Subsection (c) of § 7403 deals specifically with the adjudication of a civil action to enforce a tax lien, and the use of the term "may" in that section implies that "this discretion and flexibility extends to the decision whether or not to order foreclosure once the validity of the lien has been established." *Id.*, (citing *United States v. Hershberger*, 475 F.2d 677 (10th Cir. 1973); *United States v. Boyd*, 246 F.2d 477 (5th Cir. 1957)); *see also Rodgers*, 461 U.S. at 705-09.

Section 7403(a) provides that in enforcing a tax lien, the Government may subject "*any* property, of whatever nature, of the delinquent, or in which he has *any right, title, or interest*, to the payment of such tax liability" (emphasis added). 26 U.S.C. § 7403. The Supreme Court in *United States v. Rodgers* held that § 7403 "contemplate[s] not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any

'claim or interest' in it) and the recognition of third-party interests through the mechanism of judicial valuation and distribution." *Rodgers*, 461 U.S. at 692. Thus, here, the Government has properly asked the Court to order the sale of the entire Ranch, and not merely Wells' one-half interest. The Court finds that the Government's action commenced pursuant to § 7403 to foreclose the liens and sell the property in order to satisfy Wells' tax liabilities is proper.

However, while the Government may *ask* this Court to force the judicial sale of the entire Ranch and distribute the proceeds of the sale with respect to the Court's findings regarding the interests of the various parties involved, § 7403 does not *require* this Court to authorize a forced sale of the entire property. *Rodgers*, 461 U.S. at 706. Instead, a district court may exercise limited discretion in deciding whether or not to force the sale of property subject to a federal tax lien. *Id.* Exercising limited equitable discretion in individual cases requires the Court to perform a balancing act. *Id.* at 709. The Court should "take into account both the government's interest in prompt and certain collection of delinquent taxes and the possibility that innocent third parties will be unduly harmed" by that collection. *Id.*

The Supreme Court in *Rodgers* outlined a non-exhaustive list of four factors a district court may consider in exercising its limited discretion. *Id.* at 709-711. The Court noted that this should not be a "mechanical checklist" and stated that ultimately the district court should rest its decision on "common sense" and "consideration of special circumstances." *Id.* at 711. The factors reflect the need to balance the Government's paramount interest in collecting delinquent taxes with the potential harm to an innocent third party's reasonable interests. *Id.* The Court should examine:

> 1) "the extent to which the Government's financial interests would be prejudiced if it were relegated to a forced sale of the partial interest actually liable for the delinquent taxes." *Id.*

11

at 710;

2) whether an innocent third-party has a legitimate or legal expectation that his separate interest would not be subject to a forced sale by the delinquent taxpayer or his creditors. *Id*. at 710-11;

3) the prejudice to the third-party in personal dislocation costs and undercompensation. *Id.* at 711;

4) "the relative character and value of the non-liable and liable interests held in the property." *Id*.

Here, there are significant special circumstances that warrant this Court's consideration of the *Rodgers* factors in determining how best to exercise the Court's discretion to order a foreclosure sale pursuant to § 7403.  Wells holds an undivided one-half interest in the Ranch as a cotenant with the Pegrams.  The Government does not hold a lien against the Pegrams' one-half undivided interest.  The Pegrams, therefore, are innocent third persons whose rights in the Ranch will be substantially affected if this Court orders a foreclosure and sale of the entire property, as the Government requests.  This Court must balance the possibility that the Pegrams will be "unduly harmed" against the Government's "interest in prompt and certain collection of delinquent taxes."  *Rodgers*, 461 U.S. at 709.

The Pegrams would likely be prejudiced by the forced sale of the Ranch.  While the Pegrams will be entitled to a share of the proceeds representing their interest in the Ranch if this Courts orders a foreclosure sale, the Supreme Court cautioned in *Rodgers* that the district courts should not be blind to the fact that financial compensation may not always be an adequate substitute.  *Id.* at 704.  Not only is the 800 acre Ranch the Pegrams' primary source of income, but for the past fifteen years the Pegrams have invested considerable sums of money into the Ranch.  In total, the Pegrams have invested approximately $2,943,200.00 in the Ranch.  (Docket

#25). None of the original joint owners, including Wells, contributed to the operation. The distribution of the proceeds to the Pegrams after a sale of the Ranch, after both the payment of South Central Bank's mortgage on the property (which this Court held has priority over the lien) and the distribution of proceeds to the Government of the portion representing Well's one-half interest, may leave the Pegrams undercompensated for the time, effort, and financial resources they have expended over the years.

The Pegrams assert that they consented to the ownership arrangement in the 1992 Deed as a method of obtaining investors so that they might purchase the Ranch, while limiting their own liability for any possible future criminal actions or unpaid debts of the other joint owners. (Docket #25). The Pegrams believed that limiting the interests of their cotenants, and giving each couple only a one-sixth interest, would curtail this possibility. (Docket #25). However, the Court must note that the Pegrams did consent to an ownership arrangement that from the outset gave them only a one-half interest in property that only they occupied. Absent future conveyances to them, the Pegrams assumed the risks inherent in holding real property as a tenancy in common. Further, the Pegrams did become aware in 2000 that Wells alone now held a one-half interest in the Ranch. However, even in balancing the prejudice the Pegrams would face by the forced sale of the Ranch against the ownership arrangement the Pegrams voluntary assumed in 1992, the Court concludes that a substantial likelihood exists that a foreclosure sale of the property will unduly harm the Pegrams as innocent third parties. *See Rodgers*, 461 U.S. at 709.

Even though the Pegrams may be unduly harmed by the forced sale, the Court must now equitably balance that possibility against the harm to the Government's interest in prompt and certain collection of delinquent taxes. *Rodgers*, 461 U.S. at 709. The Supreme Court in *Rodgers*

urged the district courts to remember that the Government's interest in collecting delinquent taxes is paramount. *Id.* at 711.  It is with the weighty interest of the Government in mind that this Court evaluates the consequences of a forced sale of the Ranch.

The Government has a very strong interest in collecting the delinquent taxes owed by Wells.  On June 9, 2003, a default judgment was entered against Wells in the United States District Court for the Eastern District of North Carolina in the amount of $8,614,601.99, plus interest from June 30, 2003, until the judgment is paid.  The Ranch is not property that can be divided by the Court into a portion representing Wells' tax liabilities that may then be sold.  This Court is not in a position to pick and choose what acreage may be ordered for sale.  Therefore, if this Court does not order a foreclosure sale of the whole Ranch, the government likely will be effectively denied its interest in collecting the delinquent taxes as this time.

In similar instances involving liens placed on property owned by tenants in common, courts have relied upon property valuations provided by the parties, representations of the worth of similar property, mortgage balances, the ability of the Government to locate a buyer for the interest to be sold, estimated dislocation costs incurred by the third party, and the estimated undercompensation of the third party. *See Kingman v. United States*, 2000 U.S. Dist. LEXIS 14393, at *11-12 (D. Ohio 2000); *see also United States v. Thomassen*, 610 F.Supp, 386, 397-400 (D. Neb. 1985).  There is no evidence in the record, however, of the current property valuation of the Ranch as neither party has provided the Court with such a valuation.  However, the Court does note that the Ranch was purchased in 1992 for a sum of $700,000.00.  Further, while there is no evidence of the basis for this figure, the 1999 Deed estimates the value of the Ranch to be $1,542,600.  There is also no evidence in the record indicating the balance of the mortgage

14

remaining on the Ranch. For these reasons, it is not possible at this time for this Court to estimate the magnitude of the burden with which the Government would be faced if this Court bars the sale of the Ranch.

However, the Government's burden can be measured by the extreme length of time that Wells has been in arrears. The federal tax liens on Wells' interest in the Ranch, representing his liabilities for four separate years, have been properly filed in Green County since 1993, providing record notice of the liens. Further, the Government obtained its default judgment in the amount of $8,614,601.99 against Wells on June 30, 2003, upon which it has not been able to collect for the past four years. Wells is currently incarcerated at the Federal Correctional Institute in Butner, North Carolina, and there is no indication that Wells will pay the judgment against him. Therefore, the Government's only option is to proceed against the real property in which Wells has an interest, pursuant to its authority under 26 U.S.C. § 7403. The Supreme Court in *Rodgers* urged the district courts to remember that the Government's interest in collecting delinquent taxes is paramount, *Rodgers*, 461 U.S. at 711, and in this case it appears that the burden placed on the Government as a result of Wells' tax liabilities outweighs the burden placed on the Pegrams by any possible future judicial sale of the property.

## CONCLUSION

For the foregoing reasons, the Pegrams' Motion for Summary Judgment on their Counterclaim Against Plaintiff, United States of America is **DENIED**.

An appropriate order shall issue.